Leon GADSDEN, Plaintiff,

v.

JONES LANG LASALLE AMERICAS, INC., Defendant.

No. 00 CIV. 7854(CBM).

United States District Court,
S.D. New York.

July 11, 2002.

Anthony C. Ofodile, Brooklyn, NY, for Plaintiff.

David Bennet Ross, Peter Walker, Esq., Lori Meyers, Seyfarth Shaw, New York City, for Defendant.

### OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MOTLEY, District Judge.

## I. INTRODUCTION

Plaintiff Leon Gadsden brings this action against his former employer defen-

dant Jones Lang Lasalle, Inc. Plaintiff claims that defendant discriminated and retaliated against him in violation of Title VII, 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York City Human Rights Law. Now before the court is defendant's motion for summary judgment and for attorneys' fees, costs and disbursements. Also pending is defendant's written request for sanctions. For the reasons stated in this opinion, defendant's request for sanctions will be **GRANTED IN PART**, the motion for summary judgment will be **GRANTED**, and the motion for attorneys' fees will be **DENIED WITHOUT PREJUDICE.**

## II. PROCEDURAL BACKGROUND

Plaintiff commenced this action in October 2000. The matter was originally assigned to the Honorable Deborah Batts, and on February 23, 2001, Judge Batts entered a scheduling order which provided that, except for good cause shown, "all discovery, including expert discovery, shall be commenced in time to be completed by 5/18/01."

Judge Batts heard nothing from the parties until three months later. In a letter motion dated May 15, 2001, defendant's counsel sought an order from Judge Batts compelling plaintiff to respond to its discovery requests and setting a date for plaintiff's deposition. Defendant also asked the court to sanction plaintiff and award defendant its attorneys' fees and costs associated with the preparation and filing of the motion. According to the letter, plaintiff's counsel had been derelict in his duties over the preceding three months regarding the production of documents, responding to interrogatories, and producing his client for deposition. Defendant alleged that

plaintiff had ignored return dates on notices and subpoenas, and that plaintiff had also failed to respond to subsequent written reminders. After plaintiff had failed to respond to written reminders, defendant's counsel telephoned the offices of plaintiff's counsel on April 20. The attorney who had appeared at the original February 23 scheduling conference assured defendant's counsel that he would comply with the various discovery requests and make his client available for deposition. Agreed upon deadlines subsequently passed again with plaintiff's counsel failing to live up to his representations. Defendant's counsel, apparently having grown weary of opposing counsel's intractability, sought judicial intervention.

On May 21, 2001, Judge Batts referred the matter to Magistrate Judge Douglas Eaton for resolution. Plaintiff's counsel responded to defendant's allegations in a letter to Judge Eaton dated May 29, 2001. Plaintiff's counsel offered little in the way of excuse other than that he was "overextended," that he had been on vacation, and that his "most Senior Associate" (the attorney to whom defendant's counsel had spoken on April 20, 2001) had recently left his employ.

Judge Eaton did not look favorably upon plaintiff's counsel's proffered excuses, and in a Memorandum and Order dated May 29, 2001,[1] he ordered plaintiff's counsel to produce responses to defendant's discovery requests within the week. *See Gadsden v. Jones Lang Lasalle Americas, Inc.,* No. 00 Civ. 7854, 2001 WL 585531, at *1 (S.D.N.Y. May 30, 2001). He also ordered plaintiff to appear for deposition within two weeks and limited plaintiff to two depositions of defendant's employees. *Id.*

---

**1.** The Memorandum and Order was entered on the docket the following day, May 30, 2001.

Judge Eaton also held that, as a result of plaintiff's counsel's unexcusable delays, plaintiff had effectively waived any objections to defendant's discovery requests except for materials covered by attorney-client and/or work-product privileges. *Id.* Finally, with respect to defendant's request for fees and costs, Judge Eaton indicated that he would "defer ruling on defendant's request for sanctions," but that "defendant may renew the request, with updated information," at a later date. *Id.* at *1–*2.

Four weeks later, on June 27, 2001, plaintiff's counsel delivered a letter to Judge Eaton in which plaintiff sought an extension of the discovery deadlines that Judge Eaton had set in his Memorandum and Order. Plaintiff also requested permission to conduct more depositions. In a memorandum endorsement dated that same day, Judge Eaton denied the applications, chastising plaintiff's counsel for making what was "essentially an untimely motion for reconsideration."

After the completion of discovery, Judge Batts entered an order on December 12, 2001, which set forth a briefing schedule for defendant's summary judgment motion. Defendant's moving papers were to be served no later than February 8, 2002, plaintiff's opposition papers were due March 8, 2002, and defendant's reply was due March 18, 2002. Defendant timely served its moving papers in compliance with Judge Batts's order.

In a letter to Judge Batts dated March 4, 2002, plaintiff's counsel requested an extension of time in which to respond to defendant's motion. Plaintiff's counsel requested the extension because he was "involved in a trial last month that lasted for two weeks which made it impossible for [him] to work on little else." Judge Batts granted the request and gave plaintiff an additional three weeks—until March 29, 2002—in which to respond.

On March 6, 2002, this matter was transferred to the undersigned. On March 27, 2002, plaintiff's counsel wrote the court to request an additional three weeks in which to respond to defendant's motion. Plaintiff's counsel stated that the additional time was necessary because he "had not been feeling well for some time now and was not able to work on this motion as a result." In an order dated April 1, 2002, the court granted plaintiff's request, resetting the due date for plaintiff's opposition to April 19, 2002. The order also indicated that "[t]he parties are hereby advised that no further extensions of time will [be] granted."

Late in the day on April 23, 2002, defendant's counsel faxed a letter to the court stating that plaintiff's counsel had yet to file and serve opposition papers by the April 19 deadline. According to the letter, defendant's counsel had telephoned plaintiff's counsel on April 22 to inquire where the papers were. Defendant's counsel indicated that he had been working furiously on the papers for several days and that they would be filed and served by the morning of April 23. When they had not arrived by mid-day on April 23, defendant's counsel telephoned plaintiff's counsel, leaving a message. Plaintiff's counsel failed to return the call. Defendant's counsel then faxed its letter to the court that evening, asking the court to reject plaintiff's opposition papers as untimely and asking the court to grant its motion for summary judgment on default.

Plaintiff's counsel wrote the court the next day "to apologize" and "beg the Court's forgiveness." He stated that he had been "seriously handicapped by the departure of two attorneys who worked for me within the past one year." He also indicated that he was overextended with

numerous pending matters, and that was why he had initially asked for an extension. He made no reference to his earlier claim of illness.

Defendant's counsel replied the following day in a fax to the court, stating that the fact that plaintiff's counsel was overworked and understaffed should not excuse plaintiff's failure to comply with this court's order. Defendant renewed its request for a default judgment, or, in the alternative, asked the court to deem admitted the facts in defendant's Local Civil Rule 56 Statement. Defendant also requested an extension of time in which to file reply papers.

Later that day, April 25, 2002, the court entered an order granting defendant's request for an extension of time in which to reply. While the order indicated that the court would defer ruling for the time being on defendant's request for sanctions, it also indicated that defendant could renew its request for sanctions at oral argument and that "plaintiff must be prepared to respond."

The court heard oral argument on defendant's summary judgment motion on May 22, 2002. At that time, defendant renewed its request for sanctions and plaintiff's counsel was heard on the issue.

## III. DEFENDANT'S REQUEST FOR SANCTIONS

Defendant argues that it is entitled to have its summary judgment motion granted by default because the reasons given by plaintiff's counsel in support of his after-the-fact request for an extension of time do not rise to the level of "excusable neglect" as required by Rule 6(b)(2) of the Federal Rules of Civil Procedure. Defendant cites *Daniels v. Anheuser–Busch, Inc.,* No. 96–CV–1518, 1997 WL 538904 (N.D.N.Y. Aug. 27, 1997), for the proposition that failure to comply with a court's

scheduling order is not excused by an attorney's large caseload or meager staff. In *Daniels,* plaintiff had served and filed her opposition papers to defendant's motion for summary judgment over one month late. On defendant's application, the court ordered plaintiff to show cause why she should not be deemed to have consented to defendant's motion pursuant to that court's Local Civil Rules. In response, plaintiff's attorney admitted that he had "no good answer" and merely provided the court with "a detailed description of his calendar and generally argued that his status as a solo practitioner caused his untimely filing." *Id.* at *5. While then-District Judge Pooler explicitly indicated that she was "unpersuaded by this argument," she held that she did not have to reach the default issue because she was granting summary judgment on the merits. *Id.* Defendant points to other cases supporting its position that plaintiff's counsel's excessive caseload is not a valid reason for ignoring a court-imposed deadline. *See Canfield v. Van Atta Buick/GMC Truck, Inc.,* 127 F.3d 248 (2d Cir.1997) (per curiam) (holding that granting of motion on default was appropriate when nonmoving party failed to respond, had been warned by opposing counsel, had failed to show good cause, and Local Civil Rule provided for grant of motion on default absent showing of good cause); *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1387 (11th Cir.1981) (per curiam) ("The fact that counsel has a busy practice does not establish 'excusable neglect' under Rule 6(b)(2)."). Defendant therefore asks the court to deem its motion for summary judgment as uncontested and grant it on default.

In the alternative, defendant asks the court to deem admitted the facts contained in defendant's Local Civil Rule 56.1 Statement. In support of this request, defen-

dant cites *Sea–Land Serv., Inc. v. Citihope Int'l, Inc.*, 176 F.R.D. 118 (S.D.N.Y.1997). In that case the nonmoving party had failed to comply with repeated discovery deadlines, including requests for admission. It was the nonmovant's failure to respond to requests for admission that resulted in the admission of facts contained in the movant's Local Civil Rule 56.1 Statement.[2] In the instant case, however, defendant asks the court to reject as untimely plaintiff's Local Civil Rule 56.1 Statement in opposition, thereby deeming admitted the facts in defendant's Local Civil Rule 56.1 Statement. *See* Local Civil Rule 56.1(c) ("All material facts in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

In response to defendant's request for sanctions, plaintiff's counsel has submitted no legal arguments and cites no authority—neither in his letter to the court dated April 24, 2002, nor when heard on the issue in open court. His letter of April 24 merely details the various pending cases with which he was preoccupied at the time opposition papers were due. In his letter, plaintiff's counsel also states that he had been "seriously handicapped by the departure of two attorneys who worked for me within the past one year." These considerations, he argued, should excuse his delay in filing. In court, plaintiff's counsel supplemented this "argument" by claiming that defendant had not been prejudiced by his delay and that it would be unfair to visit sanctions upon his client as a result of his own professional shortcomings. *See* 5/22/02 Oral Arg. Tr. at 28–30.

■ The court is impressed with neither the form nor the substance of plaintiff's counsel's responses. First, the court notes that the language of Rule 6(b)(2) requires any after-the-fact request for an enlargement of time be made by "motion." *See* Fed.R.Civ.P. 6(b)(2); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 895–96 n. 5, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("*After* the time for filing has expired, however, the court (again 'for cause shown' and 'in its discretion') may extend the time only 'upon motion.'") (original emphasis). A court can, in its discretion, deem a letter request a "motion" for purposes of Rule 6(b)(2), but any such request should "contain a high degree of formality and precision." *Lujan*, 497 U.S. at 896 n. 5, 110 S.Ct. 3177. Plaintiff's counsel's letter of April 24, unlike defendant's letter which precipitated it, contains no citations to legal authority and does little but offer up a litany of unimpressive excuses, evidently designed to elicit the court's sympathy. The court does not believe that this letter satisfies the requirements of Rule 6(b)(2). Nor can the court say that plaintiff's counsel's application at oral argument reflected the requisite degree of formality and precision with respect to the issue of excusable neglect.

■■ Even if the court were to deem plaintiff's counsel's after-the-fact request a "motion" under Rule 6(b)(2), that motion is short on substance. The court first notes that "[p]reoccupation with another trial and mere oversight are not reasons for delay that are sufficient to satisfy the standard for excusable neglect." *Mason v. Shriver*, No. 96 Civ. 6942, 1999 WL 498221, at *3 (S.D.N.Y. July 13, 1999); *see also McLaughlin*, 662 F.2d at 1387. As for any consequences that counsel's client

---

**2.** The court in *Sea–Land* also noted that it had a second, independent ground for deeming the facts admitted: the nonmovant's failure to submit any Local Civil Rule 56.1 Statement in opposition. *Sea–Land,* 176 F.R.D. at 122.

may suffer, in this Circuit "a client is generally not excused from the consequences of his attorney's negligence absent extraordinary circumstances." *Cobos v. Adelphi Univ.*, 179 F.R.D. 381, 387 (E.D.N.Y.1998) (citing *Chira v. Lockheed Aircraft*, 634 F.2d 664, 666 (2d Cir.1980)).

▮ "[T]he inquiry into whether a failure to abide by a specified time constraint constitutes 'excusable neglect' is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission,' including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." *Raymond v. IBM Corp.*, 148 F.3d 63, 66 (2d Cir.1998) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). Plaintiff's counsel insists that defendant suffered no prejudice as a result of his delay. While defendant has not explicitly claimed it suffered prejudice, defendant did have to go to the expense and aggravation of tracking down plaintiff's counsel and seeking court intervention. Moreover, the court notes that defendant obtained leave to file its motion for summary judgment on December 17, 2001, with the motion due eight weeks later on February 8, 2002. Plain-tiff, however, as a result of his requests for extensions, had two weeks longer than defendant—from February 8 until April 19, over ten weeks total—in which to file his opposition papers, and he *still* managed to file them out of time. As for the reasons for the delay, the excuses proffered by plaintiff's counsel are unavailing as indicated above. With regard to whether plaintiff's counsel has acted in good faith, the procedural history detailed above makes clear that plaintiff's counsel has repeatedly ignored court-imposed and statutory deadlines, notwithstanding Judge Eaton's prior consideration of sanctions.[3] Finally, this court's order of April 1, 2002, could not have been more explicit: "The parties are hereby advised that no further extensions of time will [be] granted." This one-sentence warning was a separate paragraph in a two paragraph order. Taking account of all of these relevant circumstances, the court holds that the untimeliness of plaintiff's opposition papers was not the result of excusable neglect and the court therefore rejects plaintiff's filings.

▮ The question remains how to dispose of defendant's summary judgment motion. Defendant urges the court to simply grant the motion on default. As one

---

3. In addition, the following exchange which took place at oral argument makes the court question plaintiff's counsel's candor, if not good faith:

THE COURT: Yours is a one-man firm, is that what you are saying?

MR. OFODILE: Right now it is basically a one-man firm. . . . As the court noticed, I was just before Judge Patterson receiving a jury verdict and I had to be here. So it is very difficult for me.

\* \* \*

THE COURT: Mr. Ofodile, you indicated that you have had other lawyers to assist you I gather in the past in some of these cases, is that right?

MR. OFODILE: Yes, but at this time I'm really, I'm almost working alone.

5/22/02 Oral Arg. Tr. at 30–31. The court takes judicial notice of the fact that the above-referenced trial before Judge Patterson was *Clarke v. One Source, Inc.*, No. 99 Civ. 2323(RPB) and that Mr. Ofodile conducted that trial with the assistance of a second attorney, Ms. Precious Aneji. *See Clarke v. One Source, Inc.*, No. 99 Civ. 2323, Document No. 41, Memorandum to Docket Clerk (S.D.N.Y. May 22, 2002). While plaintiff's counsel's firm may be a one-*man* operation, it appears that there is at least one *woman* working there.

court has noted, courts in this circuit "have granted summary judgment by default where a party has failed to respond to the motion in violation of court rules and/or scheduling orders." *In re Towers Fin. Corp. Noteholders Litig.*, 996 F.Supp. 266, 273 (S.D.N.Y.1998) (collecting cases). The numerous cases cited in *Towers,* however, concerned situations in which a party had responded inadequately months after a deadline, had failed to respond altogether, or had been placed on notice that failure to comply· with a deadline would result in a default judgment. The court is therefore loathe to take the drastic step of simply granting defendant's summary judgment by default. Moreover, as the Second Circuit has noted, "[t]he fact that there has been no response to defendant's summary judgment motion does not ... mean that the motion is to be granted automatically. Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of· law.'" *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (quoting Fed.R.Civ.P. 56(c)). The court will therefore not simply grant defendant's motion on default.

Defendant, however, is entitled to the alternative relief it seeks. Local Civil Rule 56.1(c) provides that "[a]ll material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted* unless controverted by the statement required to be served by the opposing party" (emphasis added). Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party. *See e.g., Millus v. D'Angelo,* 224 F.3d. 137, 138 (2d Cir.2000); *Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998); *Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.,* 192 F.Supp.2d 143, 147

(S.D.N.Y.2002); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.,* 154 F.Supp.2d 527, 534 (S.D.N.Y.2001); *Wolde–Meskel v. Argus Cmty., Inc.,* No. 99 Civ. 10112, 2001 WL 883648, at *1 n. 1 (S.D.N.Y. Aug.7, 2001); *Beckman v. United States Postal Serv.,* 79 F.Supp.2d 394, 396 n. 2 (S.D.N.Y.2000); *Universal Calvary Church v. City of New York,* No. 96 Civ. 4606, 2000 WL 1745048, at *2 n. 5 (S.D.N.Y. Nov. 28, 2000); *Marks v. New York Univ.,* 61 F.Supp.2d 81, 84 (S.D.N.Y. 1999). Since the court has rejected plaintiff's late filings, plaintiff has, in effect, failed to file the requisite Local Civil Rule 56.1 Statement in opposition. The facts in defendant's Local Civil Rule 56.1 Statement will therefore be deemed admitted. *See Black v. USA Travel Auth.,* No. 99 Civ. 11278, 2001 WL 761070 (S.D.N.Y. July 6, 2001) ("Plaintiff failed to respond in a timely manner to defendants' summary judgment motions, despite the fact that this Court granted two requests for extensions of time. Thereafter ... this Court rejected [plaintiff's] late opposition to defendants' motions for summary judgment and deemed admitted the facts set forth in defendants' Local Civil Rule 56.1 Statements.").

## IV.  FACTUAL BACKGROUND

The following recitation of the facts is taken from defendant's Local Civil Rule 56.1 Statement since the court is ·deeming admitted the facts contained therein:

Plaintiff is an African–American male who commenced employment with defendant's predecessor-in-interest on October 22, 1997. Defendant provides labor and expertise for on-site property management, which includes maintenance and operation of the building, lease administration, financial reporting, tenant relations, and owner relations. Defendant employs approximately twenty individuals at its 335

Madison Avenue building in the positions of helper, mechanic, engineer, assistant chief engineer, chief engineer, and administrative staff.

Plaintiff was initially hired as a temporary mechanic at the 335 Madison Avenue location at the rate of $18.72 per hour as set forth in the controlling collective bargaining agreement. As a mechanic, plaintiff was responsible for, among other things, aiding in the operation and maintenance of building systems; informing the Chief Engineer and/or Assistant Chief Engineer of building conditions affecting safety, building service, building appearance, and tenant comfort; responding to tenant maintenance requests; providing quality tenant services; conducting preventative and general maintenance and generally assisting the engineers. Mechanics must be able to work independently at least 50% of the time.

Shortly after plaintiff began as a temporary mechanic, an opening arose for the position of engineer. An engineer performs many of the same tasks performed by mechanics, except that an engineer must provide supervision, training, and technical support to the mechanics and helpers who are assigned to him/her. Engineers must be able to work independently 100% of the time. Plaintiff applied for the engineer position. While he was one of the three finalists, the position was given to someone who had computer experience, something plaintiff did not have. Another engineering position opened early in 1998. Plaintiff was considered for that position, but a more qualified person was hired instead.

During plaintiff's employment, defendant provided him with training appropriate for his position in accordance with its standard procedures. In April 1998 plaintiff was promoted from temporary to regular full-time mechanic. Approximate-ly four months later, an engineer took a leave of absence. Aware of plaintiff's interest in the position, plaintiff's supervisor offered plaintiff the position as a temporary engineer until the return of the incumbent. Plaintiff was paid as an engineer, $2.41 per hour more than the mechanic rate. The incumbent returned from leave approximately two months later. Plaintiff returned to his position as a mechanic. After returning to work as a mechanic, plaintiff wrote a letter to his supervisor which stated, "I, Leon Gadsden do not feel that I am capable of running the building by myself at this time.... At this time I feel I can only work no more than 50% by myself as the mechanic of the building." Gadsden's unambiguous admission that he was incapable of running the building independently for "more than 50%" of the time amounts to a concession that he is only qualified to work as a helper, not a mechanic or an engineer. Moreover, the day after plaintiff sent the above letter, he stated in another letter to his supervisor that managing building operations had "caused [him] to experience sleepless nights" and "a lot of anxiety and stress." Despite these admissions, when another engineer position became available in July 1999, plaintiff asked to be considered for the job. A more qualified person was hired instead.

After plaintiff had worked for defendant for one year, plaintiff's supervisor came to the conclusion that plaintiff did not have all the skills he had originally claimed to possess. For example, plaintiff claimed that he was able to recharge air conditioning units, but his supervisor observed that plaintiff did not have an understanding of the practice. Plaintiff neither knew how to interpret the readings on the gauge used to measure refrigerant nor did he understand the relationship between pres-

sure temperatures and operation of the refrigeration system. He did not know how to properly charge a compressor unit—something that resulted in a hazardous situation at least once. Plaintiff also exhibited an inability to deal with tenants effectively, resulting in several tenants refusing to deal with plaintiff and requesting that defendant send other mechanics. Plaintiff also had a problem with disappearing in the middle of the day. All of the above compelled defendant to assign plaintiff to particular locations so that his whereabouts and activities were always known.

When plaintiff received his first formal performance review in August 1998, he received average to below average ratings in each category in which he was evaluated. In March 1999 plaintiff received written disciplinary notices for insubordination and improper lifting practices. In June 1999 after complaints from tenants and other employees concerning plaintiff's behavior and poor attitude, the assistant general manager and the chief engineer met with plaintiff to discuss a formal coaching and counseling memorandum regarding his performance. The memorandum memorialized discussions among plaintiff's supervisors regarding the fact that plaintiff failed to follow management directions, did not complete his work timely, and exhibited problems with teamwork and with tenant relations. Plaintiff was advised that immediate improvement was required or termination would result.

Five days after receipt of the memorandum, plaintiff was servicing one of the restrooms. Rather than use a ladder, as company safety policy required, plaintiff demanded that a security guard, whose post was near the restroom, give him the stool on which the guard was seated. The guard asked plaintiff what he intended to do with the stool. Instead of answering, plaintiff snatched the stool away from under the guard, causing the guard to fall backwards, hit his head, and injure his neck. Plaintiff also uttered profanity while taking the stool and threatened to throw out the stool when he was done. The guard reported the incident to his supervisor. The next day, plaintiff approached the guard and threatened him, saying that he would "f* * * him up." The guard reported this incident as well and reported being fearful that plaintiff would, at any time, pick a fight with him. Defendant immediately investigated the guard's reports. Upon investigation, defendant learned that another employee had witnessed the incident; the second employee had also filed a report. In August 2000, after completing its investigation, defendant discharged plaintiff for cause, i.e., for violating defendant's Violence Prevention Policy.

Plaintiff challenged his termination according to the terms of his collective bargaining agreement. The matter was heard by an independent arbitrator pursuant to that agreement. On April 19, 2000, the arbitrator issued a twelve-page decision upholding plaintiff's discharge for cause. In January 2000, while the matter was still pending before the arbitrator, plaintiff filed a complaint with the E.E.O.C., claiming that he had been discharged because of his race. Plaintiff admitted that he was never subjected to racist comments. On July 14, 2000, the E.E.O.C., noting the discharge for cause, found no probable cause for discrimination and issued a right-to-sue letter.

On September 2, 2000, plaintiff filed a second E.E.O.C. charge, this time alleging retaliation for having filed the prior complaint. Plaintiff alleged that defendant volunteered information to plaintiff's subsequent employers following his discharge from defendant and that his new employ-

ers fired him upon receipt of that information. Plaintiff could not identify any employee, however, who had supposedly passed along the information regarding his termination. In fact, defendant's policy is to refer all reference inquiries to the main office where the policy is only to confirm dates of employment. Plaintiff's subsequent employers did not terminate plaintiff because of anything defendant said or did; rather, plaintiff's subsequent employers terminated him because he had lied on his employment application and because he had performed his job duties unsatisfactorily. The E.E.O.C. eventually found no probable cause to support plaintiff's second charge.

## V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Standard

█ Summary judgment is appropriate only if "there is no genuine issue as to material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the movant to demonstrate that no genuine issue exists respecting any material fact. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). Normally, "[i]n assessing the rec-

ord to determine if such issues exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir.2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In the instant case, the court has deemed admitted the facts contained in defendant's Local Civil Rule 56.1 Statement. Nevertheless, the court must construe those facts in the light most favorable to plaintiff. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 165 (2d Cir.2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir.1996).

### B. Plaintiff's Failure to Hire/Promote Claims

█ Plaintiff alleges that defendant discriminated against him by failing to promote him to the position of engineer. In the absence of direct evidence of discrimination,[4] courts analyze claims brought under Title VII under the familiar burden-shifting framework first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[5] *See, e.g., Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376 (2d Cir.2001). Under the *McDonnell Douglas* analysis, plaintiff "has

---

4. If a plaintiff can produce direct evidence of discrimination, then a "mixed-motive" analysis is appropriate. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Fisher v. Vassar College*, 70 F.3d 1420, 1432 (2d Cir.1995). Having considered the statements contained in defendant's Local Civil Rule 56.1 Statement, the court finds that a mixed-motive analysis is unwarranted—a point apparently conceded by plaintiff for he has failed to argue a mixed-motive case in his opposition brief.

5. Plaintiff's claims brought under the New York State Human Rights Law, N.Y. Exec. Law § 296, and the New York City Human Rights Law, New York City Admin. Code § 8–107(1), are analyzed under the same bur-

den-shifting scheme as plaintiff's Title VII claims. *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999); *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n. 1 (2d Cir.1999); *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir.1992).

Plaintiff's § 1981 claims are similarly analyzed. *See Martin v. Citibank, N.A.*, 762 F.2d 212, 216–217 (2d Cir.1985) ("In a disparate treatment case the standard for liability under Title VII ... is the same as that applicable under § 1981[and] is outlined in *McDonnell Douglas v. Green*.").

Thus, while the body of the court's opinion only explicitly addresses plaintiff's Title VII claims, the analysis shall apply equally to plaintiff's § 1981, state, and local law claims.

the initial burden of 'proving by the preponderance of the evidence a prima facie case of discrimination.'" *Carlton*, 202 F.3d at 134 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). To establish a prima facie case for denial of promotion or failure to hire under Title VII, a plaintiff must show (1) that he is a member of a protected class, (2) that he applied and was qualified for the position in question, (3) that he was rejected for the position in question, (4) and that he was denied the job under circumstances giving rise to an inference of discrimination. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709–10 (2d Cir.1998).

■ In the instant case, plaintiff has failed to establish the second and fourth elements of a prima facie case. The facts admitted in defendant's Local Civil Rule 56.1 Statement demonstrate that plaintiff was not qualified for either a engineer's *or* a mechanic's position. *See* Def.'s Loc. Civ. R. 56.1 Statement ¶¶ 76–86. Moreover, plaintiff *admitted* to his supervisors that he was not qualified for an engineer's position. *See id.* ¶¶ 62, 66–67, 69. Plaintiff has therefore failed to demonstrate that he was qualified for the position in question. As for circumstances giving rise to an inference of discrimination, the facts admitted in defendant's Local Civil Rule 56.1 Statement demonstrate that the persons who were hired for engineer's positions were all more qualified than plaintiff. *See id.* ¶¶ 31–33, 44, 72–73. Plaintiff has therefore failed to demonstrate that he was denied promotion under circumstances giving rise to an inference of discrimination. Plaintiff's failure to promote claims must therefore be dismissed.

### C. Plaintiff's Wrongful Termination Claims

■ Plaintiff alleges that defendant wrongfully terminated him in violation of Title VII. Like the failure to promote claims, plaintiff's wrongful termination claims are without merit. To establish a prima facie case of wrongful termination under Title VII, a plaintiff must show (1) that he or she was a member of a protected group, (2) that he or she was qualified for the position in question, (3) that he or she was discharged from that position, and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. *See Windham v. Time Warner, Inc.*, 275 F.3d 179, 187 (2d Cir. 2001); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000).

■ Once again, plaintiff cannot make out a prima facie case. As indicated above, plaintiff was not qualified for the position he held, that of mechanic. *See* Def.'s Loc. Civ. R. 56.1 Statement ¶¶ 76–86. Moreover, there is no indication that plaintiff was terminated under circumstances giving rise to an inference of discrimination. Indeed, the evidence unequivocally demonstrates that plaintiff was terminated for cause—for violating defendant's "zero tolerance" Violence Prevention Policy. *See id.* ¶¶ 142–79. Plaintiff's unlawful discharge claims must therefore be dismissed.

### D. Plaintiff's Retaliation Claims

Plaintiff also claims that defendant retaliated against him in violation of Title VII by passing along negative information to his subsequent employers after he had filed a complaint with the E.E.O.C. This claim is similarly without merit.

■ "To establish a prima facie case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff;

and (3) a causal connection between the protected activity and the adverse employment action." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998). Plaintiff cannot establish a prima facie case because he cannot demonstrate any causal connection between his protected activities and the adverse employment actions. First, there is no evidence that defendant passed along information to plaintiff's subsequent employers. *See* Def.'s Loc. Civ. R. 56.1 Statement ¶¶ 196–97. Second, the evidence tends to indicate that plaintiff's union provided the negative information regarding plaintiff. *See id.* ¶¶ 200–01. Finally, the evidence overwhelmingly indicates that plaintiff was terminated for cause by his subsequent employers. *See id.* ¶¶ 209–11. Plaintiff's retaliation claims must therefore be dismissed.

In sum, the court having deemed admitted the facts contained in defendant's Local Civil Rule 56.1 Statement, none of plaintiff's claims can survive defendant's motion for summary judgment. Plaintiff's complaint must therefore be dismissed in its entirety.

## VI. DEFENDANT'S MOTION FOR ATTORNEYS' FEES, COSTS AND DISBURSEMENTS

 According to its notice of motion, defendant has also moved for attorneys' fees, costs and disbursements. This issue, however, has not been properly briefed by the parties. The court will therefore deny that portion of defendant's motion without prejudice. Defendant remains free to resubmit a properly briefed motion for attorneys' fees. In addition to a memorandum of law demonstrating that defendant is entitled to such relief, any motion for attorneys' fees must be accompanied by supporting affidavits together with detailed copies of billing records. *See DiFilippo v.*

*Morizio,* 759 F.2d 231, 235–36 (2d Cir. 1985).

## V. CONCLUSION

For the foregoing reasons, defendant's request for sanctions will be **GRANTED IN PART**, defendant's motion for summary judgment will be **GRANTED**, and defendant's motion for attorneys' fees will be **DENIED WITHOUT PREJUDICE.**

Submit order on fifteen days notice.